Elmer A. HIMES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–314.

Court of Criminal Appeals of Oklahoma.

July 30, 1974.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Elmer A. Himes, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County in Case No. CRF–73–2000 with the offense of Robbery With a Firearm; his punishment was set at twenty (20) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The facts briefly stated show that on July 21, 1973, at approximately 1:00 a.m., the Thrift Mart service station and convenience store located at N.E. 23rd and Air Depot Boulevard were robbed by two men, who left in a maroon Ford Falcon in which a third man was seen. The defendant was co-charged in the crime along with his brother, Earl C. Himes, Jr. and Larry E. Elrod.

At the trial Mrs. Doris Taylor, who was a clerk at the station on the night of the robbery, stated that a maroon Ford Falcon pulled into a gas pump at about 1:00 a.m. and two men put some gasoline into the car. After getting the gas, the two came into the station where a man she identified as the defendant, holding a small four-barrel pistol, told her it was a hold-up and to give him the money from the cash register. Meanwhile a man she identified as Elrod attempted to tear the phone from the wall. She said that after the defendant took the money from the till, he made her husband and her mother-in-law who were also in the station, and herself, lie on the floor, threatening to kill them. After checking her daily receipts, Mrs. Taylor estimated that One Hundred Fifty Dollars ($150.00) had been taken in the incident.

Vernon Taylor, who had come to the station at 12:30 a.m. to relieve his wife as clerk, testified to substantially the same facts as his wife, identifying Elrod and the defendant and being unable to identify the third person he had seen in the car. Both Mr. and Mrs. Taylor identified the gun introduced as State's Exhibit No. 1 as resembling the weapon used in the robbery. Taylor said that seconds after they left, a customer named Duffy came into the station and that he told Mr. Duffy what had happened and that he had tried to follow the suspects' car.

Also testifying for the State was Charles Vernon Duffy, who said he had pulled up to the store and had gotten out of the car when two men came out. He said that one of the men, whom he identified as Elrod, had walked over to a motorcyclist who was getting gas, hit him, and that then they got in the car. Duffy said when he went into the store Mr. Taylor told him that they'd been robbed, so he ran back out to his car, hoping to follow the robbers and get their license number. On cross-examination Duffy explained that although he thought someone had opened the car doors from in-

side before the two men got to the car, he didn't actually see anyone open the doors and that he had seen a man slumped in the back seat of the car, but he couldn't identify him. Mattie Jo Duffy, who was in the car with her husband at the time of the robbery testified to substantially the same facts.

Patrick Bradley said he had pulled into the station to get some gasoline for his motorcycle when two men came out of the store and one of them, whom he identified as the defendant, walked over to him and hit him once on the jaw. Bradley said he thought the doors of the suspects' car were closed when he first pulled into the station, but that later when the suspects emerged, the car doors were open. Following the incident Bradley tried to follow the car, but he didn't regain sight of it until the police had stopped it east of Midwest Blvd. On cross-examination the witness testified that Elrod was definitely the man who struck him, but that he wasn't absolutely sure of the identity of the other man who had emerged from the store.

Midwest City Police Detective Jack Hill testified that he received a report on his radio about an armed robbery at 23rd and Air Depot and was driving to the scene when he saw a car fitting the description of the getaway vehicle with three occupants going east on 23rd. Officer Hill said he turned around and pursued the car which did not stop when he turned on his flashing light and siren. He followed the suspects to Dolph Street, approximately 2 blocks east of Midwest Blvd. where they were apprehended. Officer Hill identified the defendant as the person driving the car, with Elrod seated in the backseat and Earl Himes in the passengers seat in the front. At the time of arrest no weapons were found on any of the suspects, although Officer Hill identified State's Exhibit No. 2 as the $75.82 Earl Himes had on his person and Exhibit No. 3 as items taken from the defendant at the time of arrest. On cross-examination, the policeman testified that in his opinion none of

the men were intoxicated although he noticed the odor of alcohol on all three suspects.

Patrolman Henry Carlisle arrived at the scene of the arrest while the defendants and Officers Hill and Little were still present, in a search of the area conducted at that time. Patrolman Carlisle testified that he found a small, four-cylinder gun introduced into evidence as State's Exhibit No. 1 approximately 6–8 feet from the rear of the suspects' car.

Also testifying to substantially the same facts of the arrest was Officer Vernon Little who assisted Officer Hill in the pursuit and arrest of the suspects. Officer Wayne Maxwell said that he responded to the call at N.E. 23rd and Air Depot on July 21 and took the robbery report, including the fact that a small nickel or chrome plated four-barrel pistol had been used. The policeman said that when he returned to the station he examined the gun introduced in Exhibit No. 1 and found it to match the description given by the Taylors.

On recall testimony Officer Jack Hill said that at the time the gun was recovered, following the arrest, it was wet because it had been raining, and that although it had been checked for fingerprints, none had been found.

For the defense, Earl C. Himes, Jr., brother of the defendant and a co-defendant in the case, testified that on July 21 earlier in the evening he had been paid, cashed his check, and gone out drinking with the defendant. He said that at about 10:00 p.m., they went to a bar on S. Central where he fell asleep. Himes testified that from that time until he was awakened by his brother at the time of arrest, he was unaware of anything that happened. Himes testified that the money he had with him was from his paycheck and that he knew nothing of the robbery, and had not participated in any way.

Loretta Himes, mother of the defendant testified that at approximately 12:30 a.m. the defendant had come by her house, where he also lived, to pick up some money

to take on a trip to Poteau to see his grandmother. Mrs. Himes said that her son had been drinking and she tried to convince him to rest before he went on the trip, but he left anyway, mentioning that his older brother was asleep in the car.

Called as a character reference, Dewie Mathaney, an elementary school principal for the Oklahoma City Public Schools testified that he knew the defendant, who had never been in serious trouble before and who was in his opinion of good character. The Rev. Harvey G. Albright, a local Baptist minister also testified of the good reputation of the defendant in the local community.

Others called as defense witnesses were Judy Green, who testified that the defendant and his brother had visited in her home on the night of July 21; Mrs. Janice Himes, wife of Earl Himes, Jr., who testified that her husband had cashed his weeks paycheck before going out with the defendant, and Earl Himes, Sr., the father of the defendant, who testified to the defendant's good character.

Co-defendant Elrod did not testify or call any witnesses in his own behalf.

■ The defendant's first proposition of error asserts that the verdict is not supported by the evidence. This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Jones v. State, Okl.Cr., 468 P. 2d 805 (1970).

■■ The defendant's final proposition asserts the punishment is excessive. This Court will not modify a sentence unless we can conscientiously say that under all the facts and circumstances, the sentence is so excessive as to shock the conscience of the Court. We need only observe, in the in-

stant case, that the punishment was within the range provided by law, and does not shock the conscience of this Court. See Roberts v. State, Okl.Cr., 473 P.2d 264 (1970).

Finding no error sufficient to justify modification or reversal, it is our opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BLISS, P. J., and BRETT, J., concur.